UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GEORGE PRUE,

    Plaintiff,

v.

UNIVERSITY OF WASHINGTON, *et al.*,

    Defendants.

Case No. C07-1859RSL

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on a motion for summary judgment filed by defendants the University of Washington and University employee Rachael Hogan (collectively, "defendants").[1] Plaintiff contends that defendants discriminated against him based on his race, African-American, and his age, 55-years-old, by failing to hire him for an open temporary position. Plaintiff also contends that after he complained of discrimination, the University retaliated against him.

---

[1] Plaintiff previously dismissed with prejudice his claims against a third defendant, Joanne Suffis.

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 1

For the reasons set forth below, the Court grants in part and denies in part defendants' motion.

## II. DISCUSSION

**A.  Background Facts.**

The University's UTemp Staffing Program ("U-Temps") provides on-site temporary staff to University staff as needed. It serves the entire University community and has an on-going pool of approximately 300 temporary staff. U-Temps staffing coordinators screen potential applicants to join a pool of candidates for short-term, temporary assignments as they become available.

In August 2005, plaintiff interviewed with Aaron Hinkhouse, a staffing coordinator with U-Temps to become a temporary staffing candidate. Hinkhouse found plaintiff to be "outgoing," he could "talk with almost anyone," and his communications skills were "good" but not "strong." Hinkhouse Dep. at p. 95. After the interview, Hinkhouse entered the following notes into the "availability" screen on the U-Temps database:

> George has a lot of work experience. His most relevant is an 8 year stint as an Exec Assistant & Patient Advocate at a hospital in the Virgin Islands. In this role, he interacted with lots of patients and supported several higher level doctors; but he didn't do a lot of clerical support, and as a result does not have strong computer skills. Lately he has been teaching and he wants to get away from that. He says he's open to ANYthing, very interested in perm. Possibly his experience is not as strong as it appears or is not easily transferable to admin support, and maybe his first assignment should be lighter/shorter.

Declaration of Aaron Hinkhouse, (Dkt. #34) ("Hinkhouse Decl."), Ex. A. The notes were available for potential hiring professionals to review.

In August 2005, the Department of Medical Education and Biomedical Informatics ("MEBI") sought assistance from U-Temps to obtain candidates to interview for a temporary position as an administrative coordinator. The position involved performing

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 2

"office mgmt and complex admin support for [the MEBI department]. Reception/office duties, faculty support, program support, fiscal support, event planning and facilities mgmt support. Additionally, interpret UW policies and coordinate special projects as assigned." Hinkhouse Decl., Ex. C. The MEBI department provides training, research, and service in education and data evaluation related to health care. Although U-Temps frequently assigns candidates to fill openings, in this case, MEBI wanted to interview and select a person to fill the administrative coordinator position. Hogan, who formerly held the position on a permanent basis, was transitioning into another role. She conducted all of the interviews for the position. Hogan's supervisor, Sheryl Vick, selected a candidate, that person performed the job for one week, then accepted another position. MEBI contacted U-Temps to find additional candidates.

Hinkhouse referred plaintiff to interview for the position even though it required strong clerical skills, and Hinkhouse assessed plaintiff's clerical skills at a beginner level. During the second round of interviews, Hogan interviewed four candidates, including plaintiff and Kevin Kovach. Hogan interview Kovach just before she interviewed plaintiff. Kovach's interview lasted less than ten minutes.

Although Hogan received plaintiff's resume the day before the interview, she did not have time to review it until just before she interviewed him. Hogan Dep. at p. 115. Plaintiff did not read the job description before his interview. He mistakenly believed that he was being placed in the position rather than needing to be interviewed and hired. Plaintiff's Dep. at pp. 26-27.

Hogan began plaintiff's interview by asking him to tell her about himself. Hogan and plaintiff disagree regarding what occurred after that point. According to Hogan, plaintiff began talking about his outreach work related to Hurricane Katrina. When she

asked him what kind of work he was seeking, he said he wanted to "help people" or "help patients." Hogan Dep. at pp. 137-38. Hogan explained that MEBI does not involve patient interaction, though it was a common misunderstanding about the department. While she explained what the department did, plaintiff repeatedly said "okay" without elaboration or any indication that he was interested in assisting with that work. Id. at pp. 138-39. Hogan explained that if plaintiff was interested in working with patients, he should seek positions with the medical center, to which plaintiff replied, "okay." Id. at pp. 139-40. Although Hogan contends that she paused and gave plaintiff an opportunity to correct her and express interest in the position, he did not do so. Id. at pp. 143-44. Hogan wrote on plaintiff's resume, "Wants UW job med ctrs?" Declaration of Rachel Hogan, (Dkt. #38) ("Hogan Decl.") at ¶ 15 and attachment.

Plaintiff's version of the interview is very different. According to him, he began telling Hogan about his experience as an executive secretary for two administrators at a hospital in the Virgin Islands. Declaration of George Prue, (Dkt. #47) at ¶ 11. Hogan cut him off and stated, "This job is not for you. Mr. Hinkhouse spoke too fast." Id. Hogan then suggested he might be more interested in jobs at the hospitals or jobs involving patient care. She ended the interview and ushered plaintiff from the room. Plaintiff states that he was shocked by Hogan's comments and actions. He states that Hogan cut him off after one sentence, so he never got an opportunity to discuss his education, work experience, or qualifications. Id. at ¶ 12; Prue Dep. at pp. 24-25, 28. He denies telling Hogan that he was not interested in the administrative coordinator position or that he was only seeking jobs in medical administration.

After the interviews, Hogan recommended to Vick that she hire Kovach because he was eager to perform the job. Hogan Dep. at p. 117. Vick only reviewed Kovach's

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 4

resume. Vick Dep. at p. 41. Vick hired Kovach based on Hogan's recommendation. Id. at pp. 41-43. She was looking for someone who had an interest in being part of the department because the position involved greeting visitors. Id. at p. 31. Hogan told Vick that plaintiff did not want the position but was instead interested in patient care. Id. at pp. 41, 46-47.

On September 6, 2005, plaintiff sent an e-mail to Joanne Suffis, Vice President for Human Resources, complaining that he had been discriminated against in the interview with Hogan. Plaintiff's Dep., Ex. 11 (stating that "she saw me, i.e., African American and spoke to me for a quick two minutes;" "I felt as if I was badly discriminated against"). Suffis forwarded the e-mail to UTemp staffing manager Laura Andrews, who followed up with plaintiff. Plaintiff does not recall sending the e-mail to Suffis or speaking with Andrews. On September 13, for unknown reasons,[2] Andrews posted plaintiff's September 6 e-mail to his employee profile on the U-Temps staffing database. Hinkhouse Dep. at pp. 132-33, Exs. 11 & 12. Every U-Temps staffing coordinator has access to the information in the database, including employee profiles.

After plaintiff sent the e-mail to Suffis, he was offered assignments repairing office chairs, moving furniture, parking cars, and working as a mail room clerk. In early October 2005, he stopped calling U-Temps to seek work because he believed that he was in a "pattern" of receiving referrals only for blue collar work. Plaintiff's Dep. at pp. 134-35. During his initial interview with Hinkhouse, plaintiff was told that he should call U-Temps once a week to confirm his on-going interest and availability for work.

Around September 28, 2005, plaintiff contacted the University Complaint Investigation and Resolution Office ("UCIRO") to request an investigation into his

---

[2] Andrews has since died and was not deposed in this matter.

allegations of race and age discrimination. UCIRO did not find support for plaintiff's claims. Around March 21, 2006, plaintiff filed a charge of race and age discrimination with the Equal Employment Opportunity Commission ("EEOC"). After conducting an investigation, the EEOC investigator issued a finding determining "that there is reasonable cause to believe that the allegations are true." Prue Decl., Ex. 2. After the EEOC issued its finding, the University disciplined Hogan because she "[f]ailed to use good judgment and follow university practices in using consistent interviewing techniques for all applicants during the interview process." Vick Dep. at p. 119; Declaration of Jillian Cutler, (Dkt #48), Ex. C.

Against Hogan, plaintiff asserts claims for a violation of 42 U.S.C. § 1981 and for a violation of 42 U.S.C. § 1983 based on an alleged violation of his right to equal protection. Plaintiff asserts claims against the University for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 29 U.S.C. § 621 *et seq.*; and the Washington Law Against Discrimination ("WLAD"), RCW 49.60 *et seq.*

**B.    Summary Judgment Standard and Evidentiary Issue.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, the records show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

All reasonable inferences supported by the evidence are to be drawn in favor of the

nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Id. at 1221.

Plaintiff filed a surreply requesting that the Court strike the Supplemental Declaration of Jayne Freeman and attachments thereto submitted with defendants' reply to the motion. Plaintiff notes that it is "unfair" for a defendant to submit new evidence with its reply. Surreply at p. 1 (citing Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996)). In this case, the supplemental declaration does not provide evidence that supports new arguments or otherwise creates an unfair advantage for defendants. Rather, the evidence supports arguments which defendants made in their motion and plaintiff had an ample opportunity to address. Moreover, the evidence is cumulative and would not change the result. Accordingly, the Court will not strike the materials.

**C.     Analysis.**

    **1.     Discrimination Claim.**

To establish a prima facie case of discrimination under Title VII, the ADEA and/or the WLAD, plaintiff must show that (1) he is a member of a protected class, (2) he applied for and was qualified for the position, (3) he was denied the position despite his qualifications, and (4) the position was filled with someone outside the protected class. See, e.g., Coghlan v. American Seafoods Co., LLC, 413 F.3d 1090, 1094 (9th Cir. 2005);

Rose v. Wells Fargo & Co., 902 F.2d 1417, 1421 (9th Cir. 1990) (evaluating an ADEA claim).

As an initial matter, plaintiff's filings reference numerous positions that he applied for but did not receive at the University. His amended complaint, however, clarifies that he is asserting a discrimination claim based only on defendants' failure to hire him for the administrator coordinator position. Amended Complaint at ¶¶ 7.3, 8.3, 9.3.

As for the MEBI position, defendants argue that plaintiff has not established a prima facie case of discrimination because the University did not continue to seek applicants after interviewing plaintiff. However, requiring plaintiff to demonstrate that fact would make little sense in this case when the University actually selected a candidate. In that circumstance, plaintiff is required to show that defendants selected someone outside of his protected class. See, e.g., Coghlan, 413 F.3d at 1094. Kovach is Caucasian, so plaintiff has done so. Similarly, defendants argue that Hogan found Kovach to be qualified before she interviewed plaintiff. That fact, however, is irrelevant because Hogan did not *hire* anyone prior to interviewing plaintiff. Therefore, at the time Hogan considered plaintiff for the position, the position remained open.

Defendants also argue that plaintiff was not treated differently because Kovach's interview was brief too. However, Kovach's interview, although also brief, lasted approximately twice as long as plaintiff's interview. More importantly, Kovach's interview lasted long enough for him to describe his prior work experience and to establish a rapport with Hogan. Different treatment is also shown by the fact that Kovach was hired for the job. Plaintiff has demonstrated a prima facie case of discrimination.

Because plaintiff established a prima facie case of discrimination, the burden shifts to defendants to articulate a legitimate, non-discriminatory reason for its failure to hire

1 him. See, e.g., Kuyper v. Department of Wildlife, 79 Wn. App. 732, 735 (1995). As
2 plaintiff concedes, defendants have done so. Hogan states that she did not recommend
3 plaintiff for the position because of his apparent lack of interest and enthusiasm for the
4 position. In contrast, she recommended Kovach because he was qualified and seemed
5 eager to perform the job. Hogan Dep. at p. 117; Hogan Decl. at ¶¶ 12-14; Declaration of
6 Sheryl Vick, (Dkt. #37) ("Vick Decl.") at ¶ 11.

Because defendants have asserted a legitimate non-discriminatory reason, the burden shifts back to plaintiff to establish that the reason given is a pretext for discrimination. Kuyper, 79 Wn. App. at 735. To establish pretext, a plaintiff must provide "some evidence that the articulated reason for the employment decision is unworthy of belief." Id. at 738. A plaintiff can do so by showing that "the reason has no basis in fact, it was not really a motivating factor for the decision, it lacks a temporal connection to the decision or was not a motivating factor in employment decisions for other employees in the same circumstances." Id. (citing Sellsted v. Washington Mut. Sav. Bank, 69 Wn. App. 852, 859-60 n.14 (1993)); Chuang v. University of Cal. Davis, 225 F.3d 1115, 1127 (9th Cir. 2000) (explaining that under Title VII, a plaintiff can show pretext "(1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer") (internal citation and quotation omitted). Under the WLAD, plaintiff must show that discrimination was a "substantial factor" in the hiring decision. See, e.g., Domingo v. Boeing Employees' Credit Union, 124 Wn. App. 71, 77 (2004).

In this case, plaintiff has not alleged any direct evidence of discrimination, such as discriminatory remarks. The Court therefore considers whether there is sufficient indirect

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 9

evidence of discrimination. Plaintiff is not required to produce a "smoking gun." Rather, he can discharge his burden with evidence that is "circumstantial, indirect, and inferential."[3] Chen v. Washington, 86 Wn. App. 183, 190 (1997). Although defendants claim that plaintiff's lack of clerical experience was a motivating factor, defendants hired Kovach despite what Hogan described as his "light skills."[4] Hinkhouse Dep. at p. 110; id., Ex. 8.

Defendants also contend that they did not hire plaintiff because he appeared uninterested in the position and did not sell himself. Hogan's version of the interview supports that assertion and is bolstered by other evidence of what she did and said shortly afterward. However, at this stage of the proceedings, the Court must credit plaintiff's version as true for purposes of this motion. Moreover, plaintiff contends that he, unlike other candidates, was not given a chance to sell himself or to express his interest in the position.[5] Rather, Hogan cut plaintiff off after one sentence. Prue Dep. at pp. 71-72. In addition, the MEBI department did not include any African-American faculty, staff, or students. Johnson Dep. at p. 158 & Ex. 29. Moreover, the University found that Hogan had conducted the interviews in an inconsistent manner and disciplined her for doing so. At this point, it is unclear whether the different interviewing treatment was motivated by discriminatory animus or the result of a harried professional seeking to complete the

---

[3] Plaintiff relies heavily on the EEOC's reasonable cause finding. The Court, however, gives that finding very little weight because it is conclusory and unexplained.

[4] Hogan denies describing Kovach's skills as "light." Hogan Dep. p. 161.

[5] Kovach also knew very little about the MEBI position before his interview. Declaration of Kevin Kovach, (Dkt. #46) at ¶ 4 (explaining that prior to the interview, Kovach did not know that the position was in the MEBI department or anything about that department; he knew only that the position included some reception duties).

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 10

1 interviews quickly. Plaintiff has provided enough evidence to shed doubt on defendants'
2 proffered reasons. Therefore, the case must be submitted to a jury. See, e.g., Chen, 86
3 Wn. App. at 190; see also Rose, 902 F.2d at 1423 (explaining that an inference of
4 discrimination can arise when others not in the protected class are treated more
5 favorably).

### 2. Retaliation Claim.

Plaintiff contends that defendant violated the WLAD by refusing to consider him for additional jobs after he complained to Suffis about his alleged discriminatory treatment. RCW 49.60.210(1) provides that it is an unfair practice for employers "to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter . . . ." Plaintiff's retaliation claim is subject to the *McDonnell Douglas* burden shifting analysis. See, e.g., Renz v. Spokane Eye Clinic, 114 Wn. App. 611, 618 (2002) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). To establish a prima facie case of retaliation, a plaintiff must show that 1) he engaged in statutorily protected activity, 2) the employer took some adverse action against him, and 3) retaliation was a substantial factor behind the action. See, e.g., Washington v. Boeing, 105 Wn. App. 1, 14 (2000). To satisfy the third factor, plaintiff must show some nexus between the protected activity and the adverse action. See, e.g., Francom v. Costco Wholesale Corp., 98 Wn. App. 845, 863 (2000). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. If it does so, the burden shifts back to plaintiff to show that the employer's stated reason was a pretext for a retaliatory motive. See, e.g., Renz, 114 Wn. App. at 618-19.

In this case, defendant concedes that plaintiff's internal complaint was protected

by the WLAD.  An employment action is sufficiently adverse to support a retaliation claim if it "could well dissuade a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006); see also Crawford v. Metropolitan Gov't of Nashville & Davidson County, __ U.S. __, 2009 U.S. LEXIS 870 at *14 (Jan. 26, 2009) (noting a law review article which found that "fear of retaliation is the leading reason why people stay silent instead of voicing their concerns about bias and discrimination") (internal citation and quotation omitted).

In this case, defendants argue that plaintiff was not treated differently after he complained because he continued to receive offers to work until he ceased calling in to report his availability.  Although that argument may undermine plaintiff's damages at some point, it ignores the fact that a jury could find that the posting of the complaint was in itself an adverse action.  A reasonable employee could be dissuaded from complaining of discrimination if the contents of that complaint were posted on the database used for hiring.  Indeed, Suffis acknowledged that the posting was inappropriate, it could "create bias" against the person, and that she would be concerned about retaliation based on the posting.  Suffis Dep. at pp. 95-97.  Moreover, the posting occurred just one week after plaintiff complained.  The close temporal nexus is sufficient at this stage to raise an inference that retaliation motivated the posting.  See, e.g., Francom, 98 Wn. App. at 862 ("One factor supporting retaliatory motivation is proximity in time between the protected activity and the employment action").  Defendant has not offered any explanation for the posting.  Therefore, it is not entitled to summary judgment on plaintiff's retaliation claim.

**3.  Individual Claims Against Hogan.**

To establish an equal protection violation, plaintiff must show that Hogan was motivated by a discriminatory purpose based on his age or race.  See, e.g., Thomas v. City

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 12

of Beaverton, 379 F.3d 802, 812 (9th Cir. 2004).  Defendants argue that plaintiff's claims against Hogan must be dismissed because (1) plaintiff has failed to produce the necessary evidence of intentional discrimination, and (2) Hogan is entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, __ U.S. __, 2009 U.S. LEXIS 591 at * 14 (Jan. 21, 2009) (internal citation and quotation omitted).  Immunity questions should be resolved "at the earlier possible stage in litigation" to avoid subjecting government officials to the expense of defending against "insubstantial claims."  Id. at *15 (internal citations and quotations omitted).  The Supreme Court has identified a two-step test for resolving qualified immunity claims: (1) whether the facts that a plaintiff has shown make out a violation of a constitutional right, and (2) whether the right at issue was "clearly established" at the time of the official's alleged misconduct.  Id. at *15-16 (citing Saucier v. Katz, 533 U.S. 194 (2001)).  In *Pearson*, the Supreme Court explained that the *Saucier* sequence is not mandatory, though it is often beneficial.  Id. at *22.  If an official reasonably believed that his or her conduct was lawful, qualified immunity applies.  See, e.g., Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001).  The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam) (internal citation and quotation omitted).  The Court must view the facts in the light most favorable to plaintiff.  Saucier, 533 U.S. at 201.

Plaintiff counters that Hogan is not entitled to qualified immunity because the right to be free from discrimination and the prohibition on making employment decisions based

on racial stereotypes was well established at the time of the interview. Although that is true, the Court must also consider whether Hogan reasonably believed that her conduct was lawful. Hogan believed that plaintiff was more interested in positions that involved working with patients and/or in the hospitals. Hogan Decl. at ¶¶ 12-14. The evidence of what occurred both during and after the interview supports her assumption. Undisputedly, during the interview, Hogan said something to the effect of, "It sounds like you might be interested in jobs at hospitals or jobs that involve patient care?" Plaintiff's Dep. at p. 30. Despite that clear question, plaintiff did not deny that he was interested in those jobs or explicitly express interest in the MEBI job instead. In fact, plaintiff *was* interested in jobs at the hospitals and jobs that involved patient care. Id. For purposes of his discrimination claim, plaintiff can argue that he was too shocked by the abrupt nature of the interview to counter Hogan's assertion. However, in light of his apparent interest in helping patients and failure to express interest in the MEBI position, it was reasonable for Hogan to believe that he was not interested. This is particularly true because applicants to the MEBI department frequently misunderstood that the nature of the department's work and believed that it involved patient care. It is reasonable that when choosing between qualified applicants, Hogan recommended the person who seemed to her to be more interested in the position. Furthermore, Hogan's explanation for her recommendation have been consistent. Shortly after the interviews, she told both Hinkhouse and Vick that Prue was not interested in the position. Hinkhouse Dep. at pp. 110-11; Vick Dep. at pp. 40-41. Finally, although plaintiff contends that Hogan said something to the effect that the job was not for him, the comment does not reflect stereotyping when viewed in context. Hogan did not make the statement then steer plaintiff towards lower-status positions. Rather, she offered him advice on how to find

positions in patient care. Those positions are not inferior nor stereotypically associated with any minority group. In sum, defendants have shown that Hogan reasonably believed that her conduct did not violate the law. Under the circumstances, she is entitled to qualified immunity.

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART defendants' motion for summary judgment (Dkt. #32). Plaintiff's claims against Hogan are dismissed because she is entitled to qualified immunity. Plaintiff may proceed with his claims of discrimination and retaliation against the University. Within ten days of the date of this order, the parties are ordered to file a joint status report stating when they will be ready to proceed to trial.

DATED this 5th day of February, 2009.

Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 15