HONORABLE ROBERT S. LASNIK
TRIAL DATE: June 1, 2009

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| GEORGE PRUE,<br><br>                                  Plaintiff,<br><br>    v.<br><br>UNIVERSITY OF WASHINGTON,<br><br>                                  Defendant. | No. C07-1859 RSL<br><br>DEFENDANT'S TRIAL BRIEF |

## I.  INTRODUCTION

This case involves Plaintiff George Prue's claims of race and age discrimination and retaliation against Defendant University of Washington.  Trial is scheduled to start June 1, 2009.

## II.  FACTUAL BACKGROUND

In 2005, Plaintiff George Prue moved to Seattle, Washington and applied on-line for various jobs at the University of Washington.  In August, he signed up to be in a pool of temporary employee's available for temporary assignments throughout the University; the pool was managed by an internal placement department known as U-Temps.

In September, Mr. Prue was referred to the Department of Medical Education for a screening interview for a temporary assignment in the MEBI division.   He was interviewed by Rachael Hogan, an employee in the Department.  He was not selected among several candidates for the assignment.  The interview was brief, and Ms. Hogan thought Mr. Prue

DEFENDANT'S TRIAL BRIEF-1
Cause No. C07-1859 RSL
K:\JLF\udub08001\trial docs\p-052609--Defs trial brief.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

did not seem interested in the MEBI position. she thought it sounded to her like he may interested in positions with one of the University's medical centers; Mr. Prue claims Ms. Hogan cut the interview short and rejected him because of his race and age. Kevin Kovach was selected for the temporary assignment which lasted three months.

Mr. Prue remained in the U-Temps pool throughout September. He was notified of available temporary assignments when he called in to report his availability, and was out on an assignment for part of the month. He claims he was only referred out to "manual labor" jobs instead of administrative positions he was more interested in. He stopped calling in to report he was available and interested in temporary work after just 4-5 weeks in the U-Temps pool.

After his interview with Ms. Hogan, Mr. Prue sent an email to the Vice President of Human Resources expressing dissatisfaction with the interview and suggesting he thought it was cut short because of his race. He claims he was retaliated against for sending this email. The evidence at trial will show that no one working with him to place him on an assignment was aware of his communication to the Vice President, who does not work in the U-Temps Department.

Mr. Prue continued working for the Seattle School District for the next few years. He is seeking back pay and general compensatory damages for age and race discrimination and for retaliation under state and federal law.

### III.  LEGAL ISSUES

**A.** **Plaintiff's Title VII Disparate Treatment Race Discrimination Claims Against the University of Washington .**

   **1.**   **Disparate Treatment.**

Plaintiff claims he was treated differently by University employee Rachael Hogan

DEFENDANT'S TRIAL BRIEF-2
Cause No. C07-1859 RSL
K:\JLF\udub08001\trial docs\p-052609--Defs trial brief.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

because of his race (African-American) by failing to select him for the temporary assignment to the Administrative Coordinator position in September of 2005. He also claims he was treated less favorably in the assignments he received from U-Temps.

The evidence at trial will show that the only potential materially adverse employment action[1] by the University may be the failure to select him for the temporary Administrative Coordinator assignment, which lasted three months. Plaintiff now claims he was also treated differently in the manner in which he was referred to other temporary assignments; however, it is questionable whether this would constitute an actionable "adverse employment action" to warrant inclusion in disparate treatment instructions to the jury. If the disparate treatment instructions are given to include this claim, the court should give an additional instruction allowing the jury to determine whether the Plaintiff has established an actionable adverse employment action sufficient to support a disparate treatment claim.

Ninth Circuit Model Jury Instruction 10.4A.2 provides:

**TITLE VII—"ADVERSE EMPLOYMENT ACTION" IN DISPARATE TREATMENT CASES**

> An action is an adverse employment action if it materially affects the terms, conditions, or privileges of employment.

*9th Circuit Model Instr. No. 10.4A.2*

---

[1] The definition of "adverse employment action" for purposes of a disparate treatment claim comes from *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir.2000) (finding that "[t]he removal of or substantial interference with work facilities important to the performance of the job constitutes a material change in the terms and conditions of a person's employment" and therefore qualifies as an adverse employment action, but that the employer's failure to respond to grievances did not amount to an adverse employment action because "it did not materially affect the compensation, terms, conditions, or privileges of the [plaintiffs'] employment"). *See also Kang v. U. Lim America, Inc.*, 296 F.3d 810, 818–19 (9th Cir.2002) (plaintiff established a prima facie case of disparate treatment where the defendant subjected the plaintiff "to a number of adverse employment conditions, including severe verbal and physical abuse, discriminatory overtime, and termination, that constituted 'a material change in the terms and conditions' of [the plaintiff's] employment").

DEFENDANT'S TRIAL BRIEF-3
Cause No. C07-1859 RSL
K:\JLF\udub08001\trial docs\p-052609--Defs trial brief.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE: (206) 623-8861
FAX: (206) 223-9423

### 2. The Court Should Not Give the Plaintiff's Proposed "Pretext" Jury Instruction.

The court should deny Plaintiff's request that the jury be instructed that it can infer the defendant University acted on the basis of unlawful discrimination if it's "asserted reasons" for its actions are unworthy of belief. In *Browning v. United States of America,* No. 07-35557 (9th Cir. May 22, 2009) and *Cassino v. Reichold Chemicals,* Inc. 817 F.2d 1338 (9th Cir. 1987), the Ninth Circuit affirmed District Court decisions rejecting similar proposed instructions in discrimination cases.

Properly recognizing that the jury will receive instructions on evaluating witness credibility and the elements the Plaintiff needs to prove to prevail on his disparate treatment claim, which include proving that race was a "motivating factor" in allegedly discriminatory conduct toward him, the court ruled the Plaintiff could argue the defendant's "true" motive to the jury based on the instructions as given. *Id.* The jurors will also be instructed on evaluating "circumstantial" evidence, which allows Plaintiff to argue his theory of the case.

The instruction proposed by Plaintiff constitutes an unnecessary comment on the evidence. It is also contrary to the standards set forth in *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147 (2000)(Title VII) and *Hill v. BCTI-Income Fund*, 144 Wn.2d 172 (2001)(RCW 49.60). Both cases addressed the *McDonnell-Douglas* burden-shifting mechanism for summary judgment/directed verdict proceedings, explaining standards under which the ultimate question of fact (*i.e.*, whether the employer's real motivation is unlawful discrimination) <u>is one for the jury</u>. In *Reeves*, the Supreme Court reiterated that "trial courts should not 'treat discrimination differently than other ultimate questions of fact." *Reeves*, 120 S.Ct. at 2109.

DEFENDANT'S TRIAL BRIEF-4
Cause No. C07-1859 RSL
K:\JLF\udub08001\trial docs\p-052609--Defs trial brief.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE: (206) 623-8861
FAX: (206) 223-9423

In *Hill*, despite evidence at trial that the employer's explanation for terminating the plaintiff's employment was not truthful and applying the standards from *Reeves*, the Washington Supreme Court held the evidence was still insufficient to establish that the <u>true reason for the termination was unlawful age discrimination</u>. 144 Wn.2d at 189-190.  In *Reeves*, the Court allowed that "proof the defendant's explanation is unworthy of credence" may be <u>one form of circumstantial evidence</u> that may be probative of intentional discrimination, and create a question of fact for the jury to decide if "the employer is dissembling to cover up a discriminatory purpose"; however, the Court also acknowledged that even where the employer's statement could be rejected as untrue, it is entirely possible for a jury to determine that the true reason was something other than unlawful discrimination. *Reeves*, 120 S.Ct. at 2108-09.

Here, the jury instructions setting forth the burden of proof, elements of alleged discrimination claims, and witness credibility, and explaining "circumstantial" and "direct" evidence will be sufficient to allow the Plaintiff to argue his theory of the case.

**3.     Plaintiff's requested "Unlawful Stereotyping" Instruction should not be given.**

The Court should deny Plaintiff's request to instruct the jury that "a plaintiff need not prove hostility or malice to establish intentional discrimination" and "an employment action based on a racial and/or ageist stereotype is an act of intentional discrimination", citing *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), *Raad v. Fairbanks North Star Borough*, 323 F.3d 1185 (9th Cir. 2003), and *EEOC v. Joe's Stone Crab*, *Inc.,* 220 F.3d 1263 (11th Cir. 2000).

First, such an instruction will not be supported by the evidence at trial. Contrary to the facts of this case, decisions cited by Plaintiff all involve *evidence* that the decision-

Cause No. C07-1859 RSL
K:\JLF\udub08001\trial docs\p-052609--Defs trial brief.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

making employers engaged in some form of "stereotyping" in the context of making employment decisions that affected the plaintiff-employees.[2]

Second, the proposed instruction is an improper comment on the evidence in the case. Again, the ultimate question for the jury is whether the evidence establishes that the Defendant University intentionally discriminated against Mr. Prue. Plaintiff provides no authority supporting giving such an instruction to a jury; rather, the *Price Waterhouse*, *Raad*, and *Joe's Stone Crab* cases all involve discussions of whether evidence is sufficient to raise a question of fact and send the discrimination question to the jury. *See, e.g. Joe's Stone Crab* (court still holds finding of disparate treatment requires finding that women were *intentionally treated differently* by Joe's because of or on account of their gender); on *Raad*(summary judgment case explaining the *McDonnell-Douglas* burden-shifting mechanism; it does not even reference hostility or malice); *see also*, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000). The legal standards the courts "struggled with" over the years was simply whether to allow discrimination claims to survive summary judgment absent "direct evidence" of discriminatory motive (*i.e.*, derogatory comment or statement of racial prejudice). Recognizing that "circumstantial evidence" could also lead a jury to conclude discrimination had occurred, the preceding court decisions merely expanded the scope of evidence courts should consider in determining whether a question of fact exists regarding discriminatory motive.

---

[2] *See*, *e.g.*, *Price-Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989)(in order to improve her chances for partnership, female candidate should "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry."; other female candidates for partnership also had been evaluated in sex-based terms); *Raad v. Fairbanks North Star Borough Sch. Dist.*, 323 f.3d 1185, 1196 (9th Cir. 2003)(evidence that reporting to police that Lebanese Muslim applicant's statement she was frustrated and did not want to "blow up" constituted a bomb threat to "blow up the building" may have been influenced by stereotypes about her nationality and/or religion); *E.E.O.C. v. Joe's Stone Crab*, 220 F.3d 1263, 1283-1284 (11th Cir. 2000)(restaurant's hiring decision-makers deliberately and systematically excluded female applicants from consideration for lucrative positions as servers in effort to create and maintain "Old World" fine-dining atmosphere, which it associated with all-male tuxedoed serving staff based on sexual stereotypes).

DEFENDANT'S TRIAL BRIEF-6
Cause No. C07-1859 RSL
K:\JLF\udub08001\trial docs\p-052609--Defs trial brief.doc

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE: (206) 623-8861
FAX: (206) 223-9423

### 4. Plaintiff's Title VII remedies are limited if the University Would Have Made the Same Decisions Regarding Mr. Prue's Employment.

In mixed-motive cases, plaintiffs may attempt to prove that impermissible discrimination was a "motivating" factor for the employer's challenged action. The employer may then prove it would have made the same decision in the absence of the impermissible factor ("same decision defense"). *See*, 42 U.S.C. §2000e-5(g)(2)(B). If the employer does, the plaintiff may prevail, but his remedies under Title VII are limited. *Dukes v. Walmart*, 474 F.3d 1214, 1240 (9th Cir. 2007); *see also*, *Metoyer v. CHassman*, 504 F.3d 919 (9th Cir. 2007).

Evidence at trial will establish that the same employment decisions would have been made regardless of Mr. Prue's race. Thus, any remedy for race discrimination under Title VII would be limited to equitable relief.

### B. **Plaintiff's ADEA Claim is Barred if the University Would Have Made the Same Decisions Regarding Mr. Prue's Employment.**

Plaintiff claims the University of Washington discriminated against him because of his age (52 years old) when Rachael Hogan did not select him for the temporary assignment to the Administrative Coordinator position in the MEBI Department.

"[W]here the evidence supports a finding that discriminatory animus was one of two or more reasons for the challenged decision, at least one of which may be legitimate, the jury should be instructed to determine first whether the discriminatory reason was 'a motivating factor' in the challenged action." *Dominguez-Curry v. Nev. Transp. Dept.*, 424 F.3d 1027, 1041 n.7 (9th Cir.2005); *see also Costa v. Desert Palace, Inc.*, 299 F.3d 838, 856–57 (9th Cir.)(*en banc*), *aff'd* 539 U.S. 90 (2003). The first three elements set out the elements of a "mixed motive" case under Price *Waterhouse v. Hopkins*, 490 U.S. 228, 241–42 (1989)(plurality opinion). The Ninth Circuit Pattern Instructions are sufficient to outline

DEFENDANT'S TRIAL BRIEF-7
Cause No. C07-1859 RSL
K:\JLF\udub08001\trial docs\p-052609--Defs trial brief.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE: (206) 623-8861
FAX: (206) 223-9423

Plaintiff's ADEA claim.

Under *Price Waterhouse*, even if the plaintiff proves that the employer's decision was motivated in part by unlawful discrimination, the defendant may fully escape liability if it can prove, by a preponderance of the evidence that "even if it had not taken [the protected characteristic] into account, it would have come to the same decision regarding a particular person." 490 U.S. at 242; See also, *Smith v. City of Jackson*, 544 U.S. 228 (2005)(Title VII limits on "same decision" defense do not apply to ADEA, and it still acts as complete defense*).*

Although the Ninth Circuit has not addressed the issue, other circuits have unanimously continued to afford defendants the full *Price Waterhouse* "same decision" affirmative defense in mixed-motive ADEA cases. *See, Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 512 n.3 (3d Cir.2004) ("[T]he Civil Rights Act of 1991 does not apply to ADEA cases[.]"); *Baqir v. Principi*, 434 F.3d 733, 745 (4th Cir. 2006), *cert. denied*, 127 S. Ct. 659 (2006); *E.E.O.C. v. Warfield-Rohr Casket Co., Inc.*, 364 F.3d 160, 164 n.2 (4th Cir. 2004); *Lewis v. Young Men's Christian Ass'n*, 208 F.3d 1303, 1305 (11th Cir.2000)(per curiam). Thus, if the defendant can prove by a preponderance of the evidence that it would have made the same decision even if the plaintiff's age had played no role, the defendant is entitled to a verdict of no liability.

**C.**     **Plaintiff's Claims under Washington's Law Against Discrimination (WLAD).**

    **1.**     **Disparate Treatment (RCW 49.60.180).**

Plaintiff claims the University discriminated against him in violation of RCW 49.60.180 by refusing to select him for the temporary assignment to the Administrative Coordinator position in the MEBI Department in September of 2005. He also claims he was treated differently in the manner in which he was notified of temporary assignments by

DEFENDANT'S TRIAL BRIEF-8
Cause No. C07-1859 RSL
K:\JLF\udub08001\trial docs\p-052609--Defs trial brief.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE: (206) 623-8861
FAX: (206) 223-9423

U-Temps. WPI 330.01 should be used for these claims. Whether the jury should be instructed on both theories will depend on whether Plaintiff actually produces evidence at trial to support that Mr. Prue was treated "differently" in these respects.

### 2. Retaliation (RCW 49.60.210).

Plaintiff claims U-Temp Staffing Coordinators retaliated against him in violation of RCW 49.60.210 by refusing to consider Mr. Prue for additional temporary assignments because he complained to the Vice President of Human Resources (Joanne Suffis) about what he perceived to be discriminatory treatment by Rachael Hogan.

Plaintiff proposes 9th Circuit Title VII Instructions. However, Plaintiff's retaliation claim is based solely on state law, for which a pattern instruction exists and should be used. *See, WPI 330.05.* This instruction is based upon RCW 49.60.210(1), *Delahunty v. Cahoon*, 66 Wn.App. 829, 832 P.2d 1378 (1992); *Allison v. Housing Auth. of Seattle*, 118 Wn.2d 79, 821 P.2d 34 (1991); *Schonauer v. DCR Entertainment*, 79 Wn.App. 808, 905 P.2d 392 (1995); and *Milligan v. DSHS*, 110 Wn.App. 628, 42 P.3d 418 (2002).

According to RCW 49.60.210(1) it is unlawful for "any employer, employment agency, labor union, or other person to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by *[the law against discrimination]*…"

"A discharge will support an award of damages when (1) the employee engaged in a statutorily protected *[opposition]* activity, (2) an adverse employment action was taken, and (3) the statutorily protected activity was a substantial factor in the employer's adverse employment decision." *Schonauer*, 79 Wn.App. at 827, 905 P.2d 392 (citing *Allison* and *Delahunty*). In *Ellis v. City of Seattle*, 142 Wn.2d 450, 13 P.3d 1065 (2000), the court held that to establish a RCW Chapter 49.60 claim of retaliation, the employee need only show

DEFENDANT'S TRIAL BRIEF - 9
Cause No. C07-1859 RSL
K:\JLF\udub08001\trial docs\p-052609--Defs trial brief.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE: (206) 623-8861
FAX: (206) 223-9423

he/she reasonably believed there was discrimination.

To the extent Plaintiff is allowed to pursue a claim under RCW Ch. 49.60.210 at trial, WPI 330.05 (*Employment Discrimination-Retaliation*) should be used. The Instruction should be modified by adding the definition of "substantial factor" ("a significant motivating factor in bringing about the employer's decision") found in WPI 330.01.01. *See*, *Allison v. Housing Authority*, 118 Wn.2d 79, 821 P.2d 1378 (1992)(applying standard retaliation claim). The jury should also be instructed regarding what constitutes "protected activity" under RCW Ch. 49.60.

The form of any instruction, and whether it is given at all, should depend on whether Plaintiff provides evidence that: (1) the U-Temps staffing employees who allegedly retaliated against Mr. Prue were aware that he engaged in protected activity; and (2) an "adverse employment decision" was made by a University employee with regard to Mr. Prue. The court will need to determine, based on the evidence presented at trial, whether any adverse employment decision was made. The evidence at trial will establish the employees who allegedly retaliated against Mr. Prue had no knowledge of a complaint of race discrimination, nor was any "adverse employment decision" made with regard to Mr. Prue.

**D.   Damages Issues.**

    **1.   Plaintiff's Claim For Lost Wages Should Be Limited To Wages He Could Have Earned Had He Been Selected For The Temporary Assignment He Alleges He Was Not Hired For, Offset by Interim Earnings.**

Evidence at trial will show that the job Mr. Prue claims he was not selected for was a temporary assignment that lasted three months. Since the interview with Ms. Hogan, Mr. Prue has continued to work for the Seattle School District.

DEFENDANT'S TRIAL BRIEF-10
Cause No. C07-1859 RSL
K:\JLF\udub08001\trial docs\p-052609--Defs trial brief.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE: (206) 623-8861
FAX: (206) 223-9423

Plaintiff is seeking backpay under Title VII, the ADEA, and RCW 49.60. Under both state and federal law, interim earnings should be deducted from any award of backpay. *Wheeler v. Catholic Archdiocese*, 124 Wn.2d 634(1994).[3] The backpay remedy in a Title VII case is authorized by 42 U.S.C. Sec. 2000e-5(g) (1976)(Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable). *Kauffman v. Sidreal Corp.*, 695 F.2d 343 (9th Cir. 1982).

**2. The Court Should Not Instruct the Jury Regarding Liquidated Damages Available Under the ADEA.**

A Plaintiff can recover liquidated damages under the ADEA, but only if the defendant's violation is willful. 29 U.S.C. §626(b)(ADEA remedies provision). Willfulness is generally a question for the jury to decide. *See, E.E.O.C. v. Pape Lift, Inc.*, 115 F.3d 676, 681 (9th Cir. 1997). An employer acts willfully when it "'knew or showed reckless disregard' for whether the ADEA prohibited its conduct." *Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338, 1348 (9th Cir. 1987)

However, there will be no evidence of "willful" age discrimination presented at trial; therefore no instruction should be given regarding liquidated damages under the ADEA.

**3. Limits on Non-Economic Damages and Backpay Under the ADEA.**

The ADEA does not provide for non-wage compensatory or punitive damages. *Naton v. Bank of California*, 649 F.2d 691, 698–99 (9th Cir.1981). Thus, a plaintiff cannot recover for emotional distress or pain and suffering under the ADEA. *Id.*; *see also Comm'r v. Schleier*, 515 U.S. 323, 326 (1995).

---

[3] In Title VII case, the court, not the jury, determines the amount of back pay. *Lutz v. Glendale Union High School*, 403 F.3d 1061, 1069 (9th Cir.2005).

DEFENDANT'S TRIAL BRIEF-11
Cause No. C07-1859 RSL
K:\JLF\udub08001\trial docs\p-052609--Defs trial brief.doc

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE: (206) 623-8861
FAX: (206) 223-9423

Unlike cases under Title VII, the jury determines back pay awards under the ADEA, as well as any mitigation issues.  *See, Lorillard v. Pons*, 434 U.S. 575, 582–83 (1978)(characterizing this remedy as "legal"); *Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338, 1346 (9th Cir.1987)(discussing jury trial on mitigation).  Thus, the court should instruct the jury regarding mitigation of backpay damages.

### 4. Mitigation of General Damages.

Evidence at trial will reflect that Mr. Prue failed to seek medical or mental health treatment for more than three years after his interaction with the University, despite his claims that he consistently suffered extreme emotional distress, visited his doctor several times for other conditions, and was specifically screened for depression and PTSD during this time period.  When he finally sought treatment after filing this lawsuit, he was prescribed medication that medically reduced his symptoms within a few weeks.  Thus, the court should instruct the jury with WPI 33.02:

> **Avoidable Consequences—Failure to Secure Treatment**
>
> A person who is liable for an injury to another is not liable for any damages arising after the original injury that are proximately caused by failure of the injured person to exercise ordinary care to avoid or minimize such new or increased damages.
>
> In determining whether, in the exercise of ordinary care, a person should have secured or submitted to medical treatment, as contended by Defendant you may consider the nature of the treatment, the probability of success of such treatment, the risk involved in such treatment and all of the surrounding circumstances.
>
> The defendant has the burden to prove plaintiff's failure to exercise ordinary care and the amount of damages, if any, that would have been minimized or avoided.
>
> Whether or not reasonable care requires an injured person to submit to treatment is

DEFENDANT'S TRIAL BRIEF-12
Cause No. C07-1859 RSL
K:\JLF\udub08001\trial docs\p-052609--Defs trial brief.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

a jury question. *Martin v. Foss Launch & Tug Co.*, 59 Wn.2d 302, 367 P.2d 981 (1962). The principles relating to the duty of an injured person in the securing of treatment are considered in *Dahl v. Wagner*, 87 Wash. 492, 151 P. 1079 (1915); *Hoseth v. Preston Mill Co.*, 49 Wash. 682, 96 P. 423 (1908); and *Rowe v. Whatcom County Ry. & Light Co.*, 44 Wash. 658, 87 P. 921 (1906). *Also see*, 62 A.L.R.3d 9, *Duty of Injured Person to Submit to Surgery to Minimize Tort Damages*. Plaintiff is seeking damages under state and federal law to compensate for emotional distress and "pain and suffering" allegedly resulting from medically diagnosable and medically treatable conditions (depression and anxiety). There is no reason general principles applicable to recovery of such damages would not apply here.

**E.     The Jury Should Be Given Definitional Instructions Regarding Evidence of the EEOC Reasonable Cause Determination.**

Prior to trial, the court ruled that evidence of the EEOC's "reasonable cause" determination may be admissible at trial pursuant to *Plummer v. Western Int'l Hotels Co., Inc.*, 656 502, 505 (9th Cir. 1981). *See, Dkt. No. 77(Ordering Denying Plaintiff's Motion in Limine and Granting in Part Defendant's Motion in Limine).* If the Determination is admitted into evidence, the jury should be instructed regarding the meaning of Reasonable Cause.

"Reasonable cause is more than suspicion but less than a preponderance of evidence." *In re: Napster, Inc. Copyright Litigation*, 479 F.3d 1078 (9th Cir. 2007)(quoting *United States v. Chen,* 99 F.3d 1495, 1499 (9th Cir.1996)(explicating *also In re: Grand Jury Proceedings,* 87 F.3d 377, 380 (9th Cir.1996)(stating the standard as less than "beyond a reasonable doubt" but more than "a sneaking suspicion.")).

Other Federal courts have approved jury instructions relating to reasonable cause

DEFENDANT'S TRIAL BRIEF-13
Cause No. C07-1859 RSL
K:\JLF\udub08001\trial docs\p-052609--Defs trial brief.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE: (206) 623-8861
FAX: (206) 223-9423

determinations.  Specifically, the Eleventh Circuit, approved the following instruction:

> *The Plaintiff sued the Defendant for violation of his rights under Title VII of the Civil Rights Act of 1964.  Pursuant to that Act, an individual who believes his rights have been infronged upon must first file a "Charge of Discrimination" with the Equal Employment Opportunity Commission, or the EEOC as it is called, before he or she may bring a lawsuit.*
>
> *Upon receiving that charge, the EEOC must investigate the allegation.  After investigation, the EEOC may either determine there is not reasonable cause to believe the charge is true and dismiss the charge or determine that there is reasonable cause to believe that a charge is true.  Whether or not the EEOC determines cause, the person who alleges to be aggrieved may file a lawsuit.  The EEOC's reasonable cause determination is not an adjudication of rights and liabilities.  Indeed, it is a nonadversary proceeding designed to notify the employer of the EEOC's findings, which is not reveiwable in court and not binding on the employer.*

*Goldsmith v. Bagby Elevator*, 513 F.3d 1261, 1288-89 (11th Cir. 2008).  Thus, Defendant proposes the following instruction to provide context and definitions regarding the EEOC Determination:

- **Proposed Oral Instruction to be given at the time EEOC Determination is Admitted into evidence:**  George Prue has sued the University of Washington for violation of rights under Title VII of the Civil Rights Act of 1964.  Pursuant to that Act, an individual who believes his rights have been infringed upon must first file a "Charge of Discrimination" with the Equal Employment Opportunity Commission, or the EEOC as it is called, before he or she may bring a lawsuit.  Upon receiving that charge, the EEOC must investigate the allegation.  The standard of proof used in this investigation is "reasonable cause."

*Goldsmith v. Bagby Elevator*, 513 F.3d 1261, 1288-89 (11th Cir. 2008).

- **"Reasonable cause" is more than suspicion, but less than a "preponderance of the evidence."**

*In re Napster, Inc., Copyright Litigation*, 479 F.3d 1078, 1094 (9th Cir. 2007).

- **The EEOC's reasonable cause determination is not an adjudication of rights and liabilities.  It is a nonadversary**

DEFENDANT'S TRIAL BRIEF-14
Cause No. C07-1859 RSL
K:\JLF\udub08001\trial docs\p-052609--Defs trial brief.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

> **proceeding designed to notify the employer of the EEOC's findings, which is not reviewable in court and not binding on the employer.**

*Goldsmith v. Bagby Elevator*, 513 F.3d 1261, 1288-89 (11th Cir. 2008).

Simply admitting the EEOC Determination without explanation or definition of legal terms is likely to create confusion and is unduly prejudicial to the Defendant University. *See also*, Dkt. Nos. 54, 72, and 75 (additional bases for excluding evidence of the EEOC Determination altogether).

**F.  Witness Issues.**

The jury will hear testimony regarding actions of two witnesses who will be unavailable to testify at trial. Both are former employees of the University of Washington and worked in the U-Temps Department.

**Laura Andrews**: Ms. Andrews was the Manager of U-Temps in 2005. She subsequently passed away. She was unavailable for deposition or trial testimony.

**Terry Bustamante:** Mr. Bustamante separated from the University some time ago for medical reasons. Due to ongoing serious health conditions, Mr. Bustamante was unavailable for deposition or trial testimony.

The parties have stipulated that it would be appropriate to give an oral instruction regarding the unavailability of these witnesses at trial:

> You will hear testimony regarding former University employees Laura Andrews and Terry Bustamante. You will not hear testimony from Ms. Andrews because she is deceased. You will not hear testimony from Mr. Bustamante because he is medically unable to appear at trial due to a medical condition.

//

//

DEFENDANT'S TRIAL BRIEF-15
Cause No. C07-1859 RSL
K:\JLF\udub08001\trial docs\p-052609--Defs trial brief.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE: (206) 623-8861
FAX: (206) 223-9423

1     DATED this 27th day of May, 2009.

2                               KEATING BUCKLIN & MCCORMACK, INC., P.S.

3                               s/Jayne L. Freeman
                               Jayne L. Freeman, WSBA 24318
4                               *Special Assistant Attorney General for*
                               *Defendant University of Washington*
5                               800 Fifth Avenue, Ste. 4141
                               Seattle, WA 98104
6                               206-623-8861
                              206-223-9423 Fax
7                               jfreeman@kbmlawyers.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

DEFENDANT'S TRIAL BRIEF-16
Cause No. C07-1859 RSL
K:\JLF\udub08001\trial docs\p-052609--Defs trial brief.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

# CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2009, I electronically filed Defendant's Trial Brief with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Michael Subit
Jillian Cutler
Frank, Freed, Subit & Thomas, LLP
705 2nd Avenue, Ste. 1200
Seattle, WA 98104

s/Valerie Macan
Keating, Bucklin & McCormack, Inc., P.S.
800 Fifth Avenue, Ste. 4141
Seattle, WA 98104
206-623-8861
206-223-9423 Fax
vmacan@kbmlawyers.com

DEFENDANT'S TRIAL BRIEF-17
Cause No. C07-1859 RSL
K:\JLF\udub08001\trial docs\p-052609--Defs trial brief.doc

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE: (206) 623-8861
FAX: (206) 223-9423